## GOSNICK v. WOLFF.

1. CONTRACTS—PLANS AND SPECIFICATIONS—PAINTING.
   A question of fact is presented for determination of the trial court in a nonjury case as to whether the plans and specifications, pursuant to which painting on a construction project was performed, contained the full terms of the contract and the interpretation of whether or not there had been a compliance with the contract by the defendant, where he ignored the plans and specifications and followed his own method of painting.

2. APPEAL AND ERROR—NONJURY CASE—PREPONDERANCE OF EVIDENCE.
   The Supreme Court does not reverse the findings of fact in a nonjury law case, where the trial court makes decision on disputed testimony, unless it can be said the testimony clearly preponderates against the judgment of the lower court.

3. CONTRACTS—PAINTING—BREACH OF CONTRACT—FINDING OF COURT —EVIDENCE.
   Finding of trial court that defendant painting contractor had breached his contract by not applying grouting material to

REFERENCES FOR POINTS IN HEADNOTES
[1]  12 Am Jur, Contracts § 12.
[2, 3]  3 Am Jur, Appeal and Error §§ 896, 900, 901.

exterior aggregate block pursuant to manufacturer's specifications for paint defendant had substituted for paint specified by the architect, notwithstanding defendant noticed the large voids and had drawn the condition of the wall to the attention of the owner, and payment was made before discovery of the leakage of water through the wall, is not disturbed on defendant's appeal from judgment for plaintiff, where Supreme Court cannot say the finding was against the clear preponderance of the evidence.

Appeal from Berrien; Zick (Karl F.), J. Submitted January 3, 1962. (Docket No. 22, Calendar No. 49,229.) Decided May 18, 1962.

Assumpsit by Albert Gosnick, John Simaz, and Emil Quattrin, copartners of Gosnick Construction Co., against C. L. Wolff, doing business as Industrial Painting Contractors, on guaranty contained in subcontract because of improper application of paint to concrete block building. Judgment for plaintiffs. Defendant appeals. Affirmed.

*George J. Lynch,* for plaintiffs.

*Warren Grosvenor* (*Williams & Williams,* of counsel), for defendant.

KAVANAGH, J. Plaintiffs brought this suit in the Berrien county circuit court to recover the cost of correcting claimed defective work performed by defendant. The case was heard before the court without a jury. Defendant appeals from a judgment against him for the amount of $3,000.

On April 14, 1958, the plaintiff, a general contractor, and the defendant, a subcontractor, entered into a written contract wherein the defendant was to apply 2 coats of Cementhide paint (a product of Pittsburgh Paint Company) to all exposed concrete blocks on exterior of a building per revision of specifications dated July 25, 1957, and in accordance

with the specifications of the architect. The specifications contained the following language: "Each contractor shall be responsible for the correct installation of his work to comply with the plans and specifications." The specifications further expressly authorized the contractor to use substitute materials if they "shall be equal in quality and capacity" provided such materials "shall be installed in accordance with the manufacturer's specifications applicable when not otherwise specified."

After signing the contract and before starting to paint, defendant inspected the building and noticed a part of the exterior walls of the building had been painted 1 coat of Cementhide by a prior paint sub-contractor. The paint was showing evidence of fading and peeling and no grout had been applied to the wall. He further observed the wall was of aggregate block with rather large voids in the surface.

Before starting the job defendant notified 1 of the plaintiffs of the condition of the wall as well as the architect and the owner's agent, Mark East, and asked permission to use Luminall paint in place of Cementhide. Mark East, the owner's agent, told him that if he used Luminall paint in place of Cementhide, he did so at his own risk.

Defendant then proceeded to paint the exterior of the building with 2 coats of Luminall paint and completed the exterior in the summer of 1958. Defendant was paid in full for his work under the contract, which payment had the approval of the architect.

Within the 1-year guaranty period plaintiffs complained to defendant that the interior walls of the building became wet and damp after heavy rainstorms. The architect, after checking with various subcontractors, concluded the water was coming through the wall. Defendant readily admitted he had not grouted the exterior walls and denied that his specifications called for a grout. Plaintiffs de-

manded that defendant grout and repaint the exterior walls at his own expense. Defendant refused. Plaintiffs then had the walls grouted and painted by another contractor at a cost of $3,000. Plaintiffs brought this action to recover the $3,000 under the guaranty contained in the contract.

It is the argument of defendant that the written subcontract, the revision of specifications and the architect's specifications comprise a complete contract in themselves, clear and unambiguous, and the respective rights and obligations of the parties can and should be gathered entirely from the written contract without the use or aid of any extrinsic evidence.

Defendant claims the plain language of the revision of specifications called for the application of 2 coats of Cementhide paint to the exterior block walls of the building and nothing more. He claims he had the right under the architect's specifications to use another brand of paint provided the paint was equal in quality and capacity. Defendant further contends that nowhere in the architect's specifications does it call for waterproofing or damp proofing the block walls.

Plaintiffs, however, contend that under the architect's specifications as shown on exhibit 4 (division 2, article 9), defendant should follow the manufacturer's specifications when not otherwise indicated. The catalog containing the architect's master specifications is a guide for the architect in preparing his specifications and not for the use of the installing contractor.

Defendant contends it was the architect who disregarded the manufacturer's recommendation, not the defendant; that it was the duty of the architect in preparing the specifications for Cementhide paint (Pittsburgh Paint Company) to provide for a grout if he wanted a grout. He contends it was the duty of

the architect to make the determination of whether or not the block wall had such large voids that it should be grouted, and not the duty of the defendant.

The court found the plaintiffs had met their burden of proof and had established their case by a preponderance of evidence and were entitled to a judgment. The matter really involved the construction of the contract between the parties and whether or not defendant breached the contract by not performing the work satisfactorily.

In support of the court's conclusion the trial court found as follows:

"1. Defendant did not follow the special conditions in the architect's specifications set forth by reference in the subcontract with plaintiffs, and especially did not follow the conditions referred to as article No. 9 of manufacturer's specifications, division 2, being a part of plaintiffs' exhibit No. 4. This article reads as follows:

" 'All materials, items, equipment, et cetera shall be installed in accordance with the manufacturer's specifications applicable when not otherwise specified.'

"Under the terms of the said contract, which had been modified only as to the brand of paint, the defendant was to apply 2 coats of Luminall paint according to the manufacturer's specifications. The specifications of the Luminall company showed that the first coat was to contain a grouting material. This insures the job of being moisture proof or resistant.

"2. The Luminall specifications as set forth by the manufacturers of Luminall paint, the National Chemical and Manufacturing Company, contained in plaintiffs' exhibit No. 5 reads as follows:

" 'Aggregate block (Exterior)—Mix 5 pounds of Marb-L-Cote No. 21 Bone White Texture paint with 2 quarts of water. To this, add 1 gallon of outside Luminall in paste form. Stir thoroughly to form a smooth mixture. Brush the first coat well into the

block. Apply a second coat of outside Luminall mixed according to directions.'

"The evidence showed that this painting was performed on exterior aggregate block; further to clarify the matter the evidence showed that the Marb-L-Cote is a grouting material.

"3. The evidence disclosed that the architect, after checking the work of the various subcontractors on the job, found that the paint did not have grout contained therein and that in his opinion there could have been no leakage if the grout material had been used.

"4. There was no issue as to whether or not a grouting material was used, the defendant admitting that none was used. Furthermore, and this is important, *the defendant stated on direct examination that he did not know until the trial of this cause that he should have included grout in the Luminall paint in order to comply with the manufacturer's specifications.* The defendant also admitted that he had never requested of the company its specifications for applying it. Furthermore, defendant said that he followed the directions on the paint can. A label from Luminall paint can, being defendant's exhibit 'C', was introduced into evidence, this, stating in part being as follows:

" 'For complete directions for surface preparation, direction for spray application and suggestion for test panel, ask your dealer for a specfication sheet.'

"The court finds that it was the defendant's duty to have become fully acquainted with the manufacturer's specifications for applying the paint that he recommended.

"5. Division No. 2, article No. 1 of the architect's specifications subparagraph 'B' reads as follows:

" 'Each contractor shall be responsible for the correct installation of his work to comply with the plans and specifications.' "

The lower court further found there was no waiver by the plaintiffs of the defective work of the de-

fendant.  The evidence disclosed the defendant was paid in full along with the other subcontractors when the cause of the leakage was still unknown.  The court did not arrive at its decision from extraneous evidence but rather read into the contract the provisions which were incorporated therein by reference. The contract including references is complete in itself.  Therefore, the law cited by defendant does not apply.

.. Where a contractor ignores plans and specifications for the painting of aggregate block and follows a method of his own, it becomes a question of fact for decision by the trial judge in the absence of a jury as to whether the plans and specifications contained the full terms of the contract and the interpretation of whether or not there had been a compliance with the contract by the defendant.

We do not reverse with reference to findings of fact in a law case where the trial court decides disputed testimony unless it can be said the testimony clearly preponderates against the judgment of the lower court.  *Woodard* v. *Saginaw City Lines, Inc.,* 365 Mich 273; *Insealator, Inc.,* v. *Wallace,* 357 Mich 233; *Harden* v. *Widovich,* 359 Mich 566.

A reading of the record and appendices in this case leads us to the conclusion there was sufficient evidence to warrant the trial judge's finding for the plaintiffs.  We certainly cannot say his findings were against the clear preponderance of the evidence.

The judgment of the lower court is affirmed.  Plaintiffs shall have costs.

CARR, C. J., and DETHMERS, KELLY, BLACK, SOURIS, and ADAMS, JJ., concurred with KAVANAGH, J.

OTIS M. SMITH, J., concurred in result.